IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CALIFORNIA DEPARTMENT OF WATER RESOURCES, | ) ) ) | 2:05-cv-518-GEB-PAN |
| Plaintiff, | ) ) | |
| v. | ) ) | <u>ORDER</u> |
| POWEREX CORP., a Canadian Corporation, dba POWEREX ENERGY CORP., and DOES 1 - 100, | ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff California Department of Water Resources ("DWR") moves to remand this action to the Sacramento County Superior Court. Defendant Powerex Corp. opposes the motion, contending that federal question removal jurisdiction exists. Further, Defendant moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes this dismissal motion.

<u>BACKGROUND</u>

This dispute arises out of the California energy crisis of 2000-2001. In January 2001, California Governor Gray Davis authorized the State of California, through Plaintiff, to purchase electricity to protect the health, safety, and economic interests of California citizens and businesses. That same month, the California Legislature passed legislation charging Plaintiff with the task of procuring

energy to provide California consumers with a stable supply of electricity.  See Cal. Water Code §§ 80000-80270.

Thereafter, Plaintiff entered into numerous energy transactions with Defendant, a Canadian corporation.  Plaintiff's complaint alleges that those transactions were the result of duress and/or undue influence and were contrary to public policy, and seeks damages for unjust enrichment; rescission; and restitution.  Finally, the complaint seeks "a declaration that all of the transactions between the parties for the period January 17, 2001 through December 31, 2001, are void and of no force and effect on the grounds that Plaintiff's agreements to the terms of each of the transactions was induced by duress and/or undue influence, and/or that the transactions were contrary to public policy of the State of California and to the public interest within the meaning of California Civil Code section 1689."  (Compl. at 14.)

## DISCUSSION

I. Motion to Remand

Plaintiff argues that federal question removal jurisdiction is absent since its complaint "solely challenges the formation of the individual contracts based on state-law causes of action [and] Powerex cannot seek removal based on the Foreign Sovereign Immunity Act." (Pl.'s Mot. to Remand at 15.)  Plaintiff further contends that "compelling [it] to move its state-law related case to federal court would violate the Eleventh Amendment's provision protecting a state's sovereign immunity."  (Id.)

Defendant counters that removal was proper for two independent reasons: (1) there is federal question jurisdiction under

the Federal Power Act, 16 U.S.C. § 825p ("FPA") and (2) Defendant is a "foreign state" as defined by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603, et seq. ("FSIA").

### A. Standard

Defendant bears the burden of establishing federal removal jurisdiction, "and the removal statute is strictly construed against removal jurisdiction." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999). "The presence or absence of federal-question [removal] jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. . . . The rule makes the plaintiff the master of the claim; [Plaintiff] may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

### B. Federal Question Jurisdiction Under the Federal Power Act

Plaintiff argues this action must be remanded because its "well-pleaded Complaint solely challenges the formation of the individual contracts based on state-law causes of action." (Pl.'s Mot. to Remand at 15.) Plaintiff contends that it "challenges the validity of its individual contracts with Powerex due to duress and undue influence pursuant to California Civil Code section 1575, and because the formation of the contracts under such conditions violate public policy under California Civil Code section 1689(b)(6)." (Id. at 5.) Further, Plaintiff argues, "because the Complaint does not rely on any federal law to create the causes of action or to seek relief, it is clear that the Complaint does not present a federal

question.  Thus, based on the face of the well-pleaded Complaint, removal is improper."  (Id.)

Defendant counters that Plaintiff cannot rely on the well-pleaded complaint rule since Plaintiff's complaint is "artfully pled" to avoid federal jurisdiction.  "The artful pleading doctrine allows courts to delve beyond the face of the state court complaint and find federal question jurisdiction by recharacteriz[ing] a plaintiff's state-law claim as a federal claim," Lippitt v. Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1041 (9th Cir. 2003) (internal quotation marks and citations omitted), under the circumstances "where a plaintiff articulates an inherently federal claim in state-law terms." Brennan v. S.W. Airlines Co., 134 F.3d 1405, 1409 (9th Cir. 1998). "Whether the artful pleading exception to the well-pled complaint rule applies requires an analysis of whether plaintiff['s] claims 'arise under' federal law."  In re Cal. Retail Natural Gas & Elec. Antitrust Litig., 170 F. Supp. 2d 1052, 1056 (D. Nev. 2001).  "[C]ourts have used the artful pleading doctrine in: (1) complete preemption cases, and (2) substantial federal question cases.  Subsumed within this second category are those cases where the claim is necessarily federal in character, or where the right to relief depends on the resolution of a substantial, disputed federal question."  Lippitt, 340 F.3d at 1041-42 (internal citations omitted); see also Arco Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality, 213 F.3d 1108, 1114 (9th Cir. 2000); In re Cal. Retail Natural Gas & Elec. Antitrust Litig., 107 F. Supp. 2d 1052, 1058 n.7 (D. Nev. 2001) (stating that the two exceptions, for claims that are "necessarily federal in character," and claims raising a "substantial, disputed

federal question," often "blend together in the case law.")  "Under Ninth Circuit law, a case is 'necessarily federal' when it falls within the express terms of a statute granting federal courts exclusive jurisdiction over the subject matter of the claim." Hendricks v. Dynegy Power Mktg., Inc., 160 F. Supp. 2d 1155, 1161 (S.D. Cal. 2001).  "A claim raises a substantial question of federal law when its resolution requires reference to or interpretation of federal law."  Id.

The Ninth Circuit cautions that the artful pleading doctrine "should [be] invoke[d] only in limited circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results.  While the artful pleading doctrine is a useful procedural sieve to detect traces of federal subject matter jurisdiction in a particular case, it also has substantive implications on the scope of federal jurisdiction and efficiency." Lippitt, 340 F.3d at 1041 (internal quotation marks and citations omitted).

Defendant contends "Plaintiff's claims for restitution and unjust enrichment implicate substantial questions of federal law."[1] (Def.'s Opp'n to Pl.'s Mot. at 6.)  Defendant argues, "In order to award Plaintiff restitution for Powerex's alleged 'exorbitant prices,' the state court 'would be expressly required to assume a hypothetical rate different from that actually set by [the Federal Energy Regulatory Commission ("FERC")]' pursuant to the agency's exclusive

---

[1] Defendant also argues Plaintiff's claims are completely preempted by the Federal Power Act. This issue need not be decided because of the ruling which follows.

5

1  authority under the FPA." (Id. at 6-7 (citing In re Cal. Wholesale
2  Elec. Antitrust Litig., 244 F. Supp. 2d 1072, 1079 (S.D. Cal. 2003).)
3  Defendant also contends "Plaintiff's direct challenge to the
4  reasonableness of the rates charged by Powerex therefore implicates a
5  substantial disputed question of federal law making removal of the
6  claims for restitution and unjust enrichment appropriate." (Def.'s
7  Opp'n to Pl.'s Mot. at 7.)

8       Furthermore, Defendant contends "Plaintiff's claim for
9  rescission under California Civil Code § 1689(a)(6) for violation of
10 public policy . . . implicates FERC's exclusive rate-setting
11 authority" because "Plaintiff has relied solely on the alleged
12 unreasonableness of the prices charged by Powerex to justify
13 rescission." (Id.) Finally, Defendant argues that "Plaintiff's
14 claims for duress and undue influence repeatedly challenge the
15 'exorbitant prices' and 'onerous transaction terms' in the contract as
16 the source of [its] injury[; and that resolution of] these claims
17 'seems to require the [] court, at some point, to determine the fair
18 price of the electricity that was delivered under the contract' [which
19 is] a determination that is 'clearly within FERC's jurisdiction' and
20 the plain language of the FPA." (Id. at 9 (citing Pub. Util. Dist.
21 No. 1 of Grays Harbor County Wash. v. Idacorp, Inc., 379 F.3d 641, 648
22 (9th Cir. 2004) ("Grays Harbor").)

23      Plaintiff counters that removal was inappropriate under the
24 artful pleading doctrine because Plaintiff "is not seeking to enforce
25 compliance of terms of the contracts under any regulation of federal
26 law." (Pl.'s Reply at 4.) Rather, Plaintiff contends its "action
27 simply depends on whether there were defects in contract formation
28

1  under California law." (Id.)  Plaintiff argues its "requests for
2  rescission and restitution do not directly implicate substantial
3  questions of federal law," and "do[] not require any determination of
4  the fair price of electricity. . . ." (Id.)  Plaintiff contends its
5  complaint "alleges that the contracts were improperly formed because
6  of the wide-spread market manipulation in which Powerex had
7  participated, and which resulted in an unfair bargaining position
8  among the parties under California law." (Id.)  In support of its
9  position that removal was improper, Plaintiff cites to Grays Harbor
10 for the proposition that a complaint that merely alleges contract
11 formation issues does not necessarily intrude upon the rate-setting
12 jurisdiction of FERC. (Id. at 4-5 (citing Grays Harbor, 379 F.3d at
13 652).)

14         Plaintiff also counters Defendant's contention that its
15 restitution claim invokes federal removal jurisdiction, contending
16 that if Plaintiff succeeds on its state contract formation claims "any
17 subsequent remedy claim (such as restitution) may involve FERC's rate-
18 setting jurisdiction [and would therefore be within FERC's exclusive
19 jurisdiction] and would be outside the jurisdiction of courts.
20 Consequently, . . . [Plaintiff] cannot legitimately assert this claim
21 in federal court."  (Pl.'s Reply at 5.)

22              1. Substantial Federal Question
23         The FPA contains an exclusive jurisdictional provision,
24 which provides in pertinent part:

25         The District Courts of the United States . . .
           shall have exclusive jurisdiction of violation of
26         this chapter or the rules, regulations, and orders
           thereunder, and of all suits in equity and actions
27         at law brought to enforce any liability or duty
           created by, or to enjoin any violation of, this
28

                                    7

```
                    chapter or any rule, regulation, or order
                    thereunder.
```

16 U.S.C. § 825p.  The FPA empowers FERC with "the exclusive authority to determine the reasonableness of wholesale rates." <u>Grays Harbor</u>, 379 F.3d at 647; <u>see also</u> 16 U.S.C. § 824e (Upon a determination by FERC that "any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order.").

        Plaintiff argues that the FPA is inapplicable to its contract formation claims, relying principally on <u>Grays Harbor</u>, 379 F.3d at 648, for the proposition that the determination "whether there was a contract formation problem" could be decided by a court.  But here the allegations underpinning Plaintiff's claims that the contracts are not valid allege that Plaintiff's contracts with Defendant were the result of duress and undue influence since Defendant participated in market manipulation and then demanded exorbitant prices.  These allegations can only be resolved by looking to FERC's prescribed wholesale rates.

        For example, Plaintiff alleges that "Powerex took unfair advantage of the state of emergency to demand exorbitant prices for OOM energy and onerous terms in exchanges and in all other

1  transactions between the parties." (Compl. ¶ 55.)  Additionally,
2  Plaintiff's basis for rescission of the contracts is the allegation
3  that Plaintiff suffered substantial harm from the onerous transaction
4  terms in the contracts.  (Id. ¶ 42 ("DWR was compelled to procure OOM
5  energy and agree to onerous transaction terms dictated by Powerex.
6  DWR has suffered substantial harm under the terms of the transactions
7  with Powerex and seeks to rescind each of the transactions . . . .").)
8  Also, Plaintiff contends the contracts violated public policy since
9  Plaintiff "had an interest and obligation to furnish reliable
10 reasonably priced service," which would require a determination of
11 what prices were "reasonable."  (Id. ¶ 51 ("The transactions between
12 Powerex and DWR, if allowed to stand, would prejudice the public
13 interest and frustrate public policy . . . .  DWR had an interest and
14 obligation to furnish reliable reasonably priced service to California
15 consumers.").) (See also id. ¶ 30 ("As a result of the manipulation of
16 the California energy markets, and through its own participation in
17 the manipulation of these markets, Powerex was able to demand and
18 insist on numerous onerous transaction terms, including exorbitant
19 prices, for energy it sold to DWR."); ¶ 38 ("The market manipulation
20 and market gaming created conditions that enabled Powerex to demand
21 exorbitant prices through duress and undue influence in the
22 transactions with DWR."); ¶ 39 ("Powerex used [the knowledge that no
23 other energy marketers were able to supply DWR with large volumes of
24 energy on a real-time basis] to demand exorbitant prices . . ."); ¶ 43
25 ("DWR seeks restitution of . . . benefits unjustly received and
26 retained by Powerex."); ¶ 46 ("Powerex took unfair advantage of DWR
27 . . . and induced DWR to agree to onerous transaction terms through
28

undue influence."); ¶ 47 ("DWR seeks restitution of . . . benefits unjustly received and retained by Powerex.").

As the Ninth Circuit stated in Grays Harbor, a Plaintiff "must not require the district court to make a determination as to what the 'fair' rate would have been," and "may not turn to the district court for monetary relief" because theories of recovery rooted in these determinations are within the exclusive jurisdiction of FERC.[2] Grays Harbor, 379 F.3d at 653. Since the basis for Plaintiff's duress, undue influence, and public policy state law claims is the determination of what constituted a "just and reasonable rate" for the sales of electrical energy in interstate commerce, it is evident that Plaintiff's claims are stated under the guise of California law but can only be resolved by decision on the federal question of what is a "just and reasonable rate." For the stated reasons, Plaintiff's complaint is artfully pled.[3]

### C. Eleventh Amendment Sovereign Immunity

Plaintiff argues removal violates the California's Eleventh Amendment sovereign immunity. The Eleventh Amendment provides: "The

---

[2] Plaintiff contends that if the state court were to find that valid contracts were formed, the case would be at an end, and no federal law issue would need to be reached; and if the state court found that the contracts were not valid, the calculation of monetary relief would be up to FERC, so the state court would not need to resolve any federal issue. See Grays Harbor, 379 F.3d at 653. However, because of the way Plaintiff elected to draft its complaint, before a state court could determine whether the contracts were improperly formed, it would need to decide whether the rates charged were reasonable, which is within FERC's exclusive jurisdiction.

[3] Since Plaintiff's complaint raises a substantial federal question, Defendant's arguments regarding complete preemption and Defendants' arguments regarding FSIA need not be discussed.

10

Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." However, in <u>California ex rel. Lockyer v. Dynegy</u>, 375 F.3d 831, 848 (9th Cir. 2004) ("<u>Dynegy</u>"), the Ninth Circuit held that "a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction."[4]

Therefore, because there is federal question removal jurisdiction under the FPA and since the Eleventh Amendment does not bar removal, Plaintiff's motion to remand is denied.

<u>II. Motion to Dismiss</u>[5]

Defendant moves to dismiss Plaintiff's complaint, contending that the FPA vests FERC with exclusive jurisdiction over wholesale electricity transactions and that Plaintiff's claims are barred by the field preemption doctrine. (Def.'s Mot. to Dismiss at 10-14.) Plaintiff counters that this doctrine does not apply because its common law contract formation action seeks reformation or rescission of contracts and the scope of FERC's jurisdiction is not so broad as to exclude a state common law contract formation action. (Pl.'s Opp'n

---

[4] Plaintiff asserts that a petition for certiorari challenging this decision is currently pending before the United States Supreme Court. (Pl.'s Mot. to Remand at 14.) However, the Ninth Circuit's holding in <u>Dynegy</u> is the current precedent which must be followed.

[5] Defendant has requested that judicial notice be taken of several documents which it contends support its dismissal motion. (Def.'s Request for Judicial Not. in Opp'n to Mot. to Remand.) However, this issue need not be reached since Defendant's motion is granted without reliance upon any of the requested documents.

11

at 6-10.)

Defendant contends "Plaintiff's claims must be dismissed because the FPA grants FERC '*exclusive* jurisdiction to regulate the transmission and sale at wholesale of electric energy in interstate commerce.'" (Def.'s Mot. to Dismiss at 10 (citations omitted).) Defendant argues that "FERC's exclusive jurisdiction over the field of wholesale electricity sales preempts Plaintiff's claims." (Id. at 11.) Plaintiff counters that its claims are not barred by field preemption "[b]ecause FERC does not completely occupy the field of interstate transmission and sale of energy at wholesale, and particularly because contract formation issues under state common law are not within the scope of FERC's jurisdiction." (Pl.'s Opp'n at 10.)

"Federal preemption of state law is rooted in the Supremacy Clause, Article VI, clause 2, of the United States Constitution." Transmission Agency of Cal. v. Sierra Pac. Power Co., 295 F.3d 918, 928 (9th Cir. 2002). "In the absence of express preemption, federal law may pre-empt state claims in two ways . . . . Under field preemption, if Congress evidences an intent to occupy a given field, any state law falling within that field is preempted. Alternatively, there is conflict preemption: if Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." Dynegy, 375 F.3d at 849 (internal citations and quotation marks omitted).

1          FERC has exclusive jurisdiction to determine "just and
2    reasonable" wholesale energy rates.  Furthermore, "[T]he interstate
3    'transmission' or 'sale' of wholesale energy pursuant to a federal
4    tariff--not merely the 'rates'--falls within FERC's exclusive
5    jurisdiction.  States do, of course, have jurisdiction over certain
6    sales, but we have enunciated a bright-line distinction between
7    wholesale sales, which fall within FERC's plenary jurisdiction, and
8    retail sales, over which the states exercise jurisdiction."  Id.
9          In Grays Harbor, the Plaintiff, Grays Harbor, challenged a
10   motion to dismiss by contending that its action was not preempted by
11   the FPA since its action involved only questions of contract
12   formation.  The Ninth Circuit responded to that contention, stating:

> Grays Harbor's arguments ignore the fundamental
> thrust of its complaint. In its current form,
> Grays Harbor's complaint seems to require the
> district court, at some point, to determine the
> fair price of the electricity that was delivered
> under the contract. This determination is clearly
> within FERC's jurisdiction for determining the
> reasonableness of wholesale rates.  At the very
> least, the requested relief intrudes on an
> "identifiable portion" of a field that the federal
> government has occupied and addresses a matter
> that is "in any way regulated by the federal
> government."
>
> It may be true that the district court could
> decide simply whether, for instance, there was
> duress or mutual mistake such that reformation or
> rescission may be appropriate, i.e., whether there
> was a contract formation problem. In fact, FERC
> has stated that such a determination, by itself,
> may be more appropriately resolved in the courts.
> But the district court could do no more without
> intruding into an area of exclusive FERC
> authority. Thus, the situation is analogous to
> that in Arkansas Louisiana Gas Co. v. Hall, 453
> U.S. 571, 580 . . . (1981), where the Supreme
> Court held: "the mere fact that respondents
> brought th[eir] suit under state law [does] not
> rescue it, for when [C]ongress has established an
> exclusive form of regulation, there can be no

          divided authority over interstate commerce.
Congress here has granted exclusive authority over
rate regulation to the Commission."

Grays Harbor, 379 F.3d at 648-49 (internal citations omitted); see also Pub. Utility Dist. No. 1 of Snohomish County v. Dynegy Power Mktg., Inc., 384 F.3d 756 (9th Cir. 2004) (holding that because the plaintiff's claims "ask[ed] the district court to determine the rates that 'would have been achieved in a competitive market' [and that] is the same determination as the 'fair price' determination that we held was barred by preemption principles in Grays Harbor, [the plaintiff's] claims are barred by the filed rate doctrine, by field preemption, and by conflict preemption.").

Since Plaintiff's claims require the determination of the fair price of the electricity that was delivered under the contracts, Plaintiff's claims are barred by field preemption.[6]  Therefore, Defendant's motion to dismiss Plaintiff's action is granted.

IT IS SO ORDERED.

Dated:  August 22, 2005

                                        /s/ Garland E. Burrell, Jr.
                                        GARLAND E. BURRELL, JR.
                                        United States District Judge

---

[6] Defendant also argues that Plaintiff's claims are barred because they "conflict with existing FERC proceedings and orders," and that they are "barred by the filed-rate doctrine because each of [Plaintiff's] claims necessarily and inescapably challenges the propriety of rates for wholesale sales of electricity made under FERC-approved tariffs."  (Def.'s Mot. to Dismiss at 14, 17.)  However, because Plaintiff's claims are barred by field preemption, these issues need not be discussed.

14